Good morning, Your Honors. Jason Aldrich and Michael Beranek on behalf of Appellants Robert Curtin and John Wallace, who are present before the Court. I would like to reserve five minutes for rebuttal, please. Fine. I think the trial court made a blatant abuse of discretion. It's blatant from the record because the trial court made it clear that it was reasonable to think that the jury might believe Eric Mendoza. And that's where they left it. They pointed to a couple facts that might support what Eric Mendoza said, but it didn't ask two critical questions. Who is Eric Mendoza and what did the government know about him and his allegations before they brought this case to trial? They knew Eric Mendoza had a history of lying. Numerous law enforcement contacts with both federal and municipal agencies, history of lying to the cops about his place of birth, date of birth, and other pertinent facts about himself. Yeah, but look, these cases are often going to involve people who are not the most savory. And even unsavory people may be entitled to be subjected to excessive force. Absolutely, Your Honor. These law enforcement officers deal with people who lie, cheat, and steal every day. They do that for a living. However, in this case, Eric Mendoza not only had that history of lying, he had a motivation to lie based upon his motivation to get out of the charges he was facing for criminal smuggling and for the civil lawsuit for $6 million he had brought against these agents. Now … That goes to the weight, right? Sufficiency of evidence, credibility for the jury to determine. But we're looking at the big picture here as to what the government knew. The government also knew that Eric Mendoza had made three statements to different people about what happened. And these statements had blatant and serious inconsistencies as to how he ended up on the floor, as to who did what in this cell room. And when they questioned him the fourth time about that, they simply stated in the report, he reiterated the same story. Well, which story is he talking about? And when you're looking at that kind of fact pattern, what's reasonable to ask at that point for a prosecutor who is going to bring these types of charges against Federal law enforcement officers? And I think probably the most basic question to ask would be, do the allegations that this individual is making match up against physical injury? And I don't see that that ever happened. Eric Mendoza made it clear that his Adam's apple was being crunched. Well, let's look at the photographs. There's no visible injury there to the front of his neck. Ask him the question, do you know where your Adam's apple is? With this individual, I don't know if he'd know, but they never asked it, so assume he knows where it is. How do you explain that he gets injury here to the side of his neck and nothing to the front when he's claiming he was being choked to the point that he was being blacked out? It creates doubt. It causes concern for the veracity of the statement. Do they polygraph him? No. Now, for the government, they said, well, look, maybe we can prove our case by showing that it's never permissible, never permissible to use force to a person's neck. And how do they do that? They go to the grand jury and they present an individual who testifies to that. It's never permissible to use force to a person's neck. What's this person's background? He's a federal law enforcement agent of a different federal law enforcement agency. He never went through the same training that Curtin and Wallace went through. And the training that Curtin and Wallace went through shows that clearly they were trained in four different ways to use force to a person's neck. You've got the hypoglossal. You've got the brachial plexus. There's a couple other there that these are all tactics that you can use upon a person who's resistive in nature, someone who's not complying with your commands. And when you look at the videotape and when you look at how those images break down, you can see that when Agent Curtin approaches him to talk to him, you can see that Mendoza's arms are folded. Why would that be? What kind of conversation is going on where Mendoza's going to be sitting here like this? It seems clear that as Curtin's walking in on him, he's going to be asking him to stand up. Why are his arms folded? Why is he not being more passive? It seems reasonable that they would use some amount of force on him. Well, I'm looking at the picture here and I'm quite... I believe it's one or two frames before... 573 shows him rubbing his eyes. Let me see if I can help you. 575 shows... 570, let's see, 576, 577 I think shows him... 578. 578, Your Honor. You've got better... This was the best quality we could get. And it's something that the trial court noted is that these images, they don't corroborate Mendoza's story. And that's one of the big problems with this case is... They don't corroborate anybody's story. I mean, they're pretty... Exactly. The case hinges on Eric Mendoza. Is it reasonable, and this leads to the big picture here, Your Honor, because I think this case is about a lot more, about a lot more than just recovery of attorney's fees. What are we telling our law enforcement officers when we bring criminal charges against two federal law enforcement officers for violation of civil rights based upon the word of someone like this? Well, now, look, counsel, there are going to be in excessive force cases, whether it's in local police or federal agents or Abu Ghraib, it's going to be the people who are being attacked aren't necessarily going to be very nice people. So if you're just going to go off on the fact that this guy is a liar, I don't suggest, I don't feel that that's going to get you past the Hyde Amendment standard. And I'm not relying on that alone, Your Honor. I'm not. I'm relying upon the physical injuries. I'm saying that the prosecution should have done an investigation here, should have asked the questions. Fair enough. But, you know, the idea that because these guys are bad guys in jail, I think our law is pretty clear. We can't just rely on that. And I'm not taking anything away from the fact that the officers were acquitted, but just because Mendoza, you keep harping on his being a liar, I think that's not a way to push from my standpoint. I understand, Your Honor, but I would only point to the fact that that is just one factor I'm looking at. I'm looking at the fact that he gave inconsistent statements about what happened. I'm looking about the fact that the government never polygraphed him to see which statement here matches up. I'm looking at the fact that the injuries don't match up to his allegations. That's a big concern here, especially for cops who go out there and put their lives between us and the people who do us harm, risking it every day. What are we telling them? And that was the point I was trying to make, Your Honor, is that this case is about a lot more than attorney's fees. I referred to it in my briefs as to qualified immunity, this hindsight, and I think a little bit of that went on here in the court's analysis. Why didn't Agent Curtin take him to the ground sooner? Well, Saucier v. Katz talks about that. We don't want to do that in these situations. We need to give these officers discretion, and that didn't happen here. This is a difficult case, Your Honor. I understand that. We have a heavy burden, but we've also got a lot to think about here. Cops need to have faith that they can go out there and do their job, that when they buy a house, they get married and support kids that they want to put through college, that it's not all going to go down the tubes because someone makes an allegation that's not corroborated and not supported by physical evidence. That's a big problem, and I think that's where the frivolous lies in this case. I'll reserve my remainder for rebuttal. Thank you. That's fine. Thank you. May it please the Court. Christopher Tenorio for the United States, Your Honor. This was a good-faith prosecution of an immigration detainee that was choked with two hands, and the district court found that there was, in fact, sufficient evidence to send this to the jury. Now, contrary to assertions otherwise, the Court specifically held that those allegations were corroborated by the medical report, by the photographs, and by the video. Now, the opponents have the burden here to show that the Court clearly erred and that there is a firm conviction that the district court erred, but they also must prove as a threshold that there's not unjust reasons to give the award. Now, we're not here to retry the case. However, there are some points, there are some distortions of the facts in the record that must be addressed, a lot of those things that were brought up for the first time in the reply brief, the first being that there was no use of force witnesses in the reply brief, that there was even the allegation that no one was consulted, that there was no evidence that the force was excessive, and that there were no visible injuries. There were two witnesses that presented at trial regarding whether the force was excessive or not. Now, Agents Bravo and Officer of the Inspector General, Special Agent Pugh, both testified that it is not acceptable to use two hands to choke. They cited policy, they went to training, they cited the training and the available information that they had, that the only circumstances in which someone might be able to choke a detainee with two hands is a life or death situation, and that was all. That evidence was presented. Also, down below in this. Does that relate, A, to the lack of injury or visible injury to the windpipe for Adam Zapple, and was their training the same as the officers involved? The training was the same. In fact, Agent Bravo was their supervisor. And as regarding the injuries, it is flat-out false to say that there were no visible injuries. They were recognized by Agent Bravo, by the doctor, and recognized by the district court that there were red marks on both sides of the neck. As you can see from the photo, his argument, the counsel's argument is that it doesn't go to the windpipe. That's right. But that was their argument at trial, and it was a question of fact. They alleged that the hands to the neck were pushing in the Adam Zapple. Now, questioning Dr. Hahn on the stand, he first testified that the injuries shown were consistent with choking, and second, that the fact that there was no visible injury to the Adam Zapple did not negate the fact that he was probably choked, or did not negate the fact that someone could have been choked. So it was simply just a question of fact. Now, the other items that were mentioned were that there were medical documents that were not turned over until the day before. That is incorrect. The medical documents were turned over immediately in the first group of discovery as to what Dr. Hahn had found and had discovered about Mr. Mendoza. What was turned over later were notes that were taken and an interview of Mr. Hahn in preparation for trial. That is all that was there. And it was not brought up below as being an issue in the district court of prosecutorial misconduct or otherwise. They also allege that Mr. Mendoza admitted smuggling aliens. That is factually incorrect. And also that he made this allegation only to avoid prosecution, when, in fact, this allegation was made right away and after the agents had decided that there would be no prosecution. Your opponent mentioned a couple of times the fact that there was no polygraph. That's right. Is there any explanation in the record why there wasn't? Well, Your Honor, as is evident in these cases, you do have someone that is alleged to have broken the law. We would not have gone forward if there were not – if there was not corroborating evidence as to what happened. What we had was a young man with red marks showing that he was choked. Of course, the polygraph would not have been admissible probably anyway. It wouldn't have, nor would it have changed the situation. Now, there's been – It might internally at least tell you which of his various statements were more likely true than the others. Well, I think that, first of all, there's an over-exaggeration as to which statements have the statements contradict each other. One of the statements that they referred to is not a statement, but rather a letter from the Mexican consulate passing along what they said, their interpretation of what Mr. Mendoza's allegations were. What the government was going off of was the immediate statement made by Mr. Mendoza immediately after leaving the cell and reported. There's a second statement that they might have picked at that showed that there were minor inconsistencies, but certainly nothing that contradicted the fact that his allegation was that he did not provoke any use of force and certainly not the excessive use of force that he alleged. Now, the definition of frivolous, of course, the Court is aware that it's one of the three prongs under the Hyde Amendment. Now, the difficulty that we've had, I believe, is showing what all is needed to prove frivolous. Now, the Court has, of course, addressed this in Manchester Farming, among the other cases. However, what is difficult here is how it overlaps with the definitions of both vexatious and in bad faith. Here, of course, the appellants have to prove that the government acted, that there was binding precedent that should have prevented them from acting or that it was so obvious for Lee wrong to be frivolous. And that second prong, I believe, is the only one alleged here. Now, the problem is that what is meant by so obviously wrong, the Court has said previously that it means without foundation, but also something more, and that something more we contend is prosecutorial misconduct. Now, the district court below, which was in the unique position of having heard the trial, all the testimony and evidence, made its decision, denied the Rule 29 and said that there was sufficient evidence, and then gave a detailed record as to what was clear, based on the video and other evidence, and what were questions for the jury. Now, we respectfully disagreed that the standard that was applied to the government at trial was that we had to prove that it was sadistic and malicious, amounting to punishment. And we also disagreed with the Court's ruling that the appellants or then claimants in district court did not have to show prosecutorial misconduct, and also that the question of innocence was not an issue. Now, of course, the information that was received after the trial regarding the memorandum that were sent, that were written contemporaneously, do not go to the issue as to whether the government brought this in bad faith or not. However, as a threshold matter, the appellants must show that there are not special circumstances to show that this award is unjust, and for that reason. I can't tell, but did the district court consider those memos? No. They specifically stand on the record they did not. Now, they must show that they are a prevailing party, and by being acquitted, that should justify, that should qualify as being the prevailing party. However, that does not equate to being innocent. And although they do not have the burden to prove their innocence, evidence to the contrary would certainly undermine whether this would be a just award, even assuming frivolousness was shown. So your argument is that those, I'll call it those Garrity reports, right? Yes. Go to whether there are special circumstances that would make any award unjust? Exactly, Your Honor. That's our position. And so you think even though they're not admissible, right? Right. In the criminal trial, they are admissible in the determination of the motion. That's our position. But you never made that argument to the district court. No, Your Honor. That's actually not correct. We did make that to the district court. You made the argument, but you didn't furnish the reports? No, we did. And it is in the record in the addendum to our report. Okay. So in answer to my question. You didn't look at them before. In answer to my question. Right. Yes, Your Honor. In answer to my question, you're saying what? It's not clear that the district court considered them or what? No. The court was very clear. We submitted them, argued that the court could consider it. The district court specifically said we're making our ruling, but we're not considering those Garrity statements as part of our ruling. Okay. So this more than issue or the special circumstances, of course, we're drawing from the Gilbert decision from the Eleventh Circuit, which this Court has adopted, and show that there must be some type of malice or something that must be proven. And now, this has not been addressed specifically on the frivolous prong, because there's been kind of indication that there's only an objective standard. But what we contend is that there must be some kind of showing of prostitutorial misconduct. In the Manchester ruling, this Court said that it had to be outlandish prostitutorial misconduct, that often to embarrass or annoy the defendants, or so obvious that it's frivolous, which would impute the knowledge that it is wrong to the government, and that they would act anyway. That is what was alleged in the Bronstein case, in which they found it to be frivolous. In the Tukor International case, Your Honor, found that it's not just faulty judgment, but in that case, there's an allegation of intentional fraud. And in the Lindbergh case, also from the circuit, there were other motivations alleged that the government acted upon. I guess they intertwine a little bit, but wouldn't it be difficult to prove frivolousness without proving prosecutorial misconduct as you did so? I believe so. I do believe so, Your Honor. And there is some intertwine, but that is our exact position, that you must prove that frivolousness necessarily means prosecutorial misconduct. Anything short of that would not meet the standard. Do you think those two things are separate concepts, frivolousness on the one hand and misconduct on the other? Well, I think that it's not explicitly clear from the case law, and I think that that's what we're asking, that that would be clarified, that they are the same thing, that to be frivolous would necessarily be prosecutorial misconduct. Now, the allegations of misconduct in this case, two of which, there were three that we could identify, two of which were raised on appeal for the first time, and the third one was raised down below. The first was that the government misled the grand jury, that they misstated the standard of touching the neck. Now, what Agent Pugh, which was of the same agency as the defendants, now appellants, and that being the INS within the Department of Justice at that time, he stated that he was asked, is it ever, are there certain areas that can't be touched, and does one of those include the neck? And his specific words were, I don't recall training in which you could go to the neck. Now, he even underlined or went back to that statement when he testified at trial by saying that there's never the only circumstances where you can go to the neck is in life or death situations. So there might be dispute as to the accuracy of his statement. However, what they're arguing is that we should have put exculpatory evidence into the grand jury, which, of course, as the Court knows, is not necessary. Likewise, the use of force discovery was not an issue in the district court as to whether that was a discovery violation. It was debatable even at that point whether it was discoverable. It was received two weeks prior to trial. The reason that they brought it up on appeal is to allege that it was prejudicial not to have it before the grand jury. In other words, they argued that it could have been exculpatory. Again, not necessary. And finally, the medical documents, they argued, were also exculpatory, but only to the extent that they showed the injuries were minimal. And again, they are not entitled to have the exculpatory evidence before the grand jury. And those are the only allegations of misconduct. Can I come back to your prosecutorial misconduct theory? Yes, Your Honor. It would be prosecutorial misconduct for the government to bring a case where the fault and the frivolousness was created in the run-up investigation so that what the government prosecutor took into the courtroom was a case that had been abysmally investigated, had failed to interview appropriate witnesses, had really taken tunnel vision in the preparation of the case. Would that not qualify as a frivolous case? Well, it would depend, I guess, on the knowledge of the specific prosecutor, where they knew that it was. Well, they insulate the prosecutor. The prosecutor picks up the file without knowing what the investigation was, takes it into court. And the prosecutor is acting in good faith, but, in fact, everybody associated with the prosecution up to that point was totally incompetent or had an agenda? I believe so. You think that would be? I do not. That wouldn't be prosecutorial misconduct? That would not be, because. It could be frivolous. Well, but it wouldn't be so obviously wrong. And I think that's where it comes in. Unless it were. If it were obviously wrong, then I think that imputes knowledge to the prosecutor. In fact, Congressman Hyde would be shocked to hear that response. Well, perhaps. But it was the language that was developed in the subsequent case law. And Congressman Hyde does talk about it having to be frivolously wrong, but in the same sense saying willfully wrong, which would also impute knowledge and intent by the. I'm assuming that it's willfully wrong up to the prosecutor. In other words, the prosecutor suddenly becomes the baron. I mean, that may be a fictional hypothetical, outlandish hypothetical, but dividing responsibility and saying, look, this prosecutor picks up the file, goes in thinking that what he or she's been told is the facts, but everybody else knows. So they're willful, but the prosecutor isn't. Well, I think if that prosecutor is acting in good faith and it wasn't otherwise obvious, then it would not be frivolous. That was the Manchester standard. So obviously wrong has to be frivolous. Correct, Your Honor. So it has to be obvious, not just wrong, but obvious. Correct. Obvious to whom? The prosecutor or the other people who built the case? Well, I believe at least to the prosecutor who would be ultimately responsible for that trial. Well, ultimately responsible. The attorney general is responsible ultimately. I understand. And therefore, it sounds like we're kind of, well, anyway. I understand the dilemma, and I think it would have to be a case-by-case basis, really. Well, it may be. But that's why I asked the question. You suggested we should adopt a standard which says that there has to be prosecutorial misconduct. I do. He's letting the prosecutor be the barrier to a frivolous case. Well, I do. And as the case law shows, even in that case, even if we do find that that would be frivolous and prosecutorial misconduct, despite it not being obvious to the prosecutor that finally takes the case, the standard shows that even if there is frivolousness, there might be special circumstances to undermine that award. And that includes mal ‑‑ well, it could include malice or abusive process. Because as the court in Gilbert recognized, that was in the original version of the act, they had to prove malice and abuse or abuse. And that was taken out. So in order to make up for that missing language, they showed, okay, well, now the burden is on the appellants, and there might be special circumstances despite the fact. So I think it might fall under that circumstances of whether there was malice or not. Okay. Unless there's questions regarding the excessive force standard or the Garrity issues, I'll defer those. In summation, the district court here found that there was sufficient evidence, both in its Rule 49 and in its response to the motion under the Hyde Amendment. Specifically, we found that the prosecution was not groundless and not with little probability of success. The appellants have shown no basis to second-guess the court's findings, despite the factual inaccuracies presented, and despite the fact that the appellants have benefited from the unavailable and contradictory reports that the government did not have at trial. They were able to testify after viewing the videotape and without the risk of cross-examination as to the contradictory statements. The victim in this case was an uncharged immigration detainee. I think we know the facts. Understood, Your Honor. I just wanted to make it clear. The district court specifically found that the injuries were in the area that made his account somewhat credible. So he did, the district court did make specific findings as to the credibility and corroboration. The appellants cannot establish prosecutorial misconduct. They could not otherwise overcome special circumstances. In this case, it would make any award unjust. So as a debatable case, this was properly left to the jury, and we posit that that's where this Court should have remained, or that's where this case should have remained. I thank you. All right. Thank you. Rebuttal, Mr. Aldrich. If prosecutorial misconduct was the standard, I think that would be the language in the statute. It's not. It says, vexatiousness, bad faith, or frivolous. Or frivolous. And frivolous has been defined. Groundless, with little prospect of success, often brought to embarrass or annoy the defendant. Often, not always. Groundless. Well, that would mean that there's absolutely no evidence there, and we know that if someone makes an assertion or an allegation, well, that can be direct testimony in court. So that would be some evidence. Which means that any time anyone can speak or make an allegation, then the groundless element could therefore theoretically be satisfied and or not satisfied, actually, and the defendant can never recover. And that's obviously not the situation. I don't think that's what Senator Hyde wanted, nor Congress. So I think the best way to look at this is to don't promote it. Well, he appreciates the promotion. Sorry for my question. I think he wanted that promotion earlier. I don't know about now. The standard is frivolous, Your Honors. Right. And I think that has clearly been shown in this case. And I completely disagree with Appelli as to its version of the facts. Had they bothered to look at the use-of-force policies on a use-of-force case before presenting the case to the grand jury, this problem in testimony from Agent Pugh would have never happened. I completely disagree with Appelli that the medical records weren't turned over until the day before trial, and I'm relying on the declaration of defense counsel from trial. The use-of-force policies supplied to the defense, 14 days before trial, I understand were buried in about 800 pages of discovery. What is the prosecution doing here? And I submit that if prosecutorial misconduct is a standard, I think we may have met it. As I alluded to before, this case is about a lot more than just recovery of attorneys' fees. It's saying a lot to the law enforcement officers that protect us every day. And what are we telling them? That's a great jury argument. And you've already made it. Okay. I think the briefs say a lot more about what else went on in this case. I think we don't need to be lectured on respect for law enforcement. We also have a Constitution and statutes to uphold. I understand, Your Honor. There was a lot more that went on in this case that showed that this case was groundless. It had very little prospect of success, and I think Eric Mendoza proved that at trial. All of the concerns that the prosecution could have had if they had bothered to look at this case proved true. He admitted to lying to the jury. It just showed what a horrible case this was. And I submit to you that that is groundless. They had no chance of success. And this case needs to be overturned because I think the record shows that there was a blatant, a blatant abuse of discretion here. Submit it, Your Honors. All right. Thank you. And we thank both counsel. The case is submitted for decision. Next and a final case on today's argument calendar is United States versus Rivera. See us. Thank you.
judges: T.G. Nelson, Tashima, Fisher